STATE OF CONNECTICUT *v.* DEVON DUNBAR
(13155)

DUPONT, C. J., and FOTI and SPEAR, Js.

Argued December 8, 1994—decision released March 28, 1995

*Louis S. Avitabile,* special public defender, with whom, on the brief, was *Meryl Anne Spat,* for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *John Davenport,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of assault of a peace officer in violation of General Statutes § 53a-167c,[1] assault in the second degree in violation of General Statutes § 53a-60 (a) (2),[2] and assault

---

[1] General Statutes § 53a-167c provides in relevant part: "(a) A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ."

[2] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

in the third degree in violation of General Statutes § 53a-61 (a).[3] The defendant was sentenced on each of the first two counts for a term of imprisonment of six years, suspended after one year, followed by five years probation, and for a term of one year on each of the remaining counts, with all sentences to run concurrently.

The defendant raises three claims on appeal: (1) that the trial court improperly instructed the jury on the intent necessary for the crimes of assault of a peace officer; (2) that punishment for the convictions of assault in the second degree and assault of a peace officer violated his double jeopardy rights; and (3) that punishment for the convictions of assault in the third degree and assault of a peace officer violated his double jeopardy rights. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On August 27, 1992, at approximately 8:15 p.m., members of the Waterbury police department were effecting arrests on Walnut Street in Waterbury. As Officer John Kennelly was struggling with an arrestee, the defendant approached Kennelly from behind and struck him on the head, at least twice. Officer Walter Faust observed the defendant's actions and rushed to Kennelly's aid. The defendant wrenched a flashlight from Faust's hand and struck him over the left eye with it. The defendant then struck Faust with the flashlight at least three more times, knocking him to the ground. The defendant was then arrested and handcuffed with the aid of another officer.

---

[3] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

I

The defendant claims that the trial court improperly failed to instruct the jury on the specific intent necessary to commit the crimes of assault of a peace officer. This claim was not preserved at trial. The defendant seeks review under the plain error doctrine[4] and the bypass doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). The defendant argues that the trial court failed to instruct on an essential element of the crimes charged, which is constitutionally impermissible. *State* v. *Williamson,* 206 Conn. 685, 708, 539 A.2d 561 (1988).

Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 213 Conn. 239–40. The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *State* v. *Wideman,* 36 Conn. App. 190, 204–205, 650 A.2d 571 (1994), cert. denied, 232 Conn. 903, 653 A.2d 192 (1995). "We may . . . dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." *State* v. *Plude,*

_____

[4] Practice Book § 4185 provides: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interest of justice notice plain error not brought to the attention of the trial court."

30 Conn. App. 527, 537, 621 A.2d 1342, cert. denied, 235 Conn. 923, 625 A.2d 824 (1993).

The claim of failure to instruct the jury adequately with regard to an essential element of the crime of assault of a peace officer may result in a due process violation implicating the fairness of the trial. *State* v. *Hinton*, 227 Conn. 301, 313–14, 630 A.2d 593 (1993). The issue is one of constitutional magnitude implicating a fundamental right. The defendant, however, has not satisfied the third condition enunciated in *Golding*. He has failed to show that a constitutional violation clearly exists and that he was deprived of a fair trial.

The trial court instructed the jury as follows: "Now, I want to talk to you about these charges and what elements the state has to prove to meet its burden of proof. As for the charge of assault on a police officer, in the first and second counts of the information, the defendant is charged with the crimes of assault on a police officer in violation of General Statutes § 53a-167c; that statute provides in pertinent part that a person is guilty of assault of a peace officer when with intent to prevent a reasonably identifiable police officer as defined in § 53a-3 (9)—which I'll explain to you later—this person intends to prevent a reasonably identifiable peace officer from performing his duty and in doing so causes physical injury to such peace officer while this officer is in the performance of his duty."

The trial court did not specifically define the term intent until it gave its charge on the offense of assault in the third degree.[5] The trial court repeated an iden-

---

[5] In its charge, the court stated: "Intentional conduct is purposeful conduct rather than conduct that is accidental or inadvertent. One way in which a jury can determine what a person's intention was at any given time, aside from that person's own testimony, is first by determining what that person's conduct was, including any statements he made, and what the cir-

tical definition of intent with regard to the charge of assault in the second degree. The court also reminded the jury "that the burden of proving intent beyond a reasonable doubt is on the state."

The defendant argues that the trial court specifically defined intent as to the third and fourth counts charging assault in the second degree and assault in the third degree, but did not do so for the first and second counts charging assault of a peace officer. Although the court could have provided a more thorough instruction by referring to its definition of intent as applying to all crimes charged against the defendant, our review must determine whether it was reasonably possible that the jury was mislead. Under the third prong of *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if from the substance of the charge rather than its form, it is reasonably possible that the jury was misled. *State* v. *Walton*, 227 Conn. 32, 65, 630 A.2d 990 (1993). To be adequate, the charge must have provided the jurors with a clear understanding of the elements of the crime of assault of a peace officer, and have afforded proper guidance for the determination of whether those elements were proved beyond a reasonable doubt. See *State* v. *Sinclair*, 197 Conn. 574, 581, 500 A.2d 539 (1985).

Having reviewed the charge as a whole, we conclude that it is not reasonably possible that the jury was misled. The element of intent required for the crime

cumstances were surrounding that conduct, and then from that conduct and those circumstances inferring what his intention was.

"In other words, a person's intention may be inferred from his conduct. You may infer from a fact that the accused engaged in conduct, that he intended to engage in that conduct. This inference is not a necessary one.

"You are not required to infer intent from the accused's conduct, but it is an inference that you may draw if you find it is a reasonable and logical inference."

of assault of a peace officer was conveyed to the jury. While the court did not define intent as part of its instruction on the crime of assault of a peace officer, it used the word in its ordinary sense, in a manner that clearly conveyed what had to be proved by the state to justify a conviction. " '[W]hen a word contained in an essential element carries its ordinary meaning, failure to give the statutory definition will not constitute error.' " Id., 581. Under the circumstances, the jury was adequately instructed on the element of intent and the instruction was not constitutionally inadequate. See *State* v. *Howard*, 204 Conn. 1, 3–4, 526 A.2d 526 (1987). Therefore, the defendant's claim fails under the third prong of *Golding*.

Under the plain error doctrine, the defendant can prevail only if the error undermines the public confidence in, or impairs the fairness and integrity of, the judicial process. *State* v. *Avila*, 223 Conn. 595, 607, 613 A.2d 731 (1992). We conclude that the defendant's claim does not warrant plain error review.

## II

The defendant next claims that he was twice subjected to jeopardy when punished for the offense of assault of a peace officer and for the offense of assault in the second degree. He seeks review of this unpreserved claim under *Golding* and makes his claim under the multiple punishments aspect of the double jeopardy bar. Double jeopardy claims arising in the course of a single trial and raised for the first time on appeal are reviewable. *State* v. *Chicano*, 216 Conn. 699, 705, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991).

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offence to be twice

put in jeopardy of life or limb. This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. . . . Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of article first, § 9, include protection against double jeopardy. . . . This constitutional guarantee serves three separate functions: (1) It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]." (Citations omitted; internal quotation marks omitted.) *State* v. *Chicano*, supra, 216 Conn. 705–706.

The defendant's claim implicates the third type of constitutional protection. When a defendant alleges multiple punishments for the same offense, he bears the burden of demonstrating that the charges arise out of the same act or transaction, and that the charged crimes are the same offense. *State* v. *Palmer*, 206 Conn. 40, 52, 536 A.2d 936 (1988). Here, the charges arose out of the same transaction. Therefore, the sole issue is whether the crimes constitute the same offense. "The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." *State* v. *Chicano*, supra, 216 Conn. 706–707. " '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " *State* v. *Greco*, 216 Conn. 282, 291, 579 A.2d 84 (1990).

The defendant concedes that under the *Blockburger* test, assault in the second degree is not a lesser included

offense of assault of a peace officer. The defendant agrees that applying the *Blockburger* test clearly demonstrates that these are two separate crimes for which the defendant could be prosecuted and punished without violating the constitutional prohibition against double jeopardy. *State* v. *Russell*, 25 Conn. App. 243, 250, 594 A.2d 1000, cert. denied, 220 Conn. 911, 597 A.2d 338 (1991).[6] He argues, however, that the presumption under *Blockburger* may be rebutted by showing a "clear legislative intent that the two statutes be treated as one for double jeopardy purposes." Id., 251. To support his argument, the defendant relies on the following legislative history. In 1969, the legislature approved Public Acts 1969, No. 828, which was codified, in part, as General Statutes § 53a-60, "Assault in the Second Degree: Class D Felony," to take effect on October 1, 1971. Section 53a-60 (a) originally proscribed six types of conduct, including (1) intentionally causing serious physical injury, (2) intentionally causing or attempting to cause injury by means of a deadly weapon or dangerous instrument, and (3) causing physical injury to a police officer or fireman with intent to prevent him from performing his lawful duty. In 1973, the legislature repealed General Statutes (1972 Noncum. Sup.) § 53a-60 (a) (3) and replaced it with § 53a-167c (a). See Public Acts 1973, No. 73-639. The defendant argues that because the current offense of assault of a peace officer; General Statutes § 53a-167c (a); was derived, in part, from the then existing offense of second degree

---

[6] Each of the crimes of assault of a peace officer and assault in the second degree contains an element that the other does not. A comparison of the intent elements of these crimes reveals a critical difference between the two statutes. An assault of a peace officer under § 53a-167c (a) occurs when a person intends to prevent a reasonably identifiable peace officer from performing his duties. Intent to cause physical injury is not a prerequisite to culpability under this statute. By contrast, assault in the second degree under § 53a-60 (a) (2) occurs when a person intends to cause physical injury to another person.

assault; General Statutes (1972 Noncum. Sup.) § 53a-60 (a); the legislature clearly intended to treat §§ 53a-167c (a) and 53a-60 (a) (2) as one offense for double jeopardy purposes. We find the defendant's argument unpersuasive.

We recently concluded that a defendant's convictions of assault in the second degree as an accessory in violation of § 53a-60 (a) (5) and assault of an employee of the department of correction in violation of § 53a-167c (a) (1) did not violate his double jeopardy rights. *State* v. *Nixon*, 32 Conn. App. 224, 235–40, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995). Our reasoning in *Nixon* is controlling in this case. The purpose of § 53a-167c (a) is to prevent and punish injurious behavior intended to interfere with public servants' performing their duties. The purpose of § 53a-60 (a) (2) is to prevent and punish the use of a deadly weapon or dangerous instrument to injure another person. The statutes have different intents, one targets a specific victim and the other targets an instrumentality. The legislature enacted § 53a-167c (a), knowing full well that § 53a-60 (a) (2) is a separate provision for the intentional infliction of physical injury by means of a deadly weapon or dangerous instrument. "It is a basic tenet of statutory construction that the legislature acts with full knowledge of existing statutes and that it intends to create one body of law." *State* v. *Nixon*, supra, 240.

We conclude that the defendant's historical analysis has not established a clear legislative intent to treat §§ 53a-167c (a) and 53a-60 (a) (2) as one offense for double jeopardy purposes.[7] Having failed to rebut the pre-

[7] The defendant also argues that § 53a-60 (a) (2) relates to assaults on all persons and is a general law, and § 53a-60 (a) (3), from which § 53a-167c (a) is partially derived, relates to assaults on all peace officers as particular persons and is a specific law. He argues that it is a rule of statutory construction that a specific law controls over a general one. We find no merit in this argument as applicable to an analysis of double jeopardy.

sumption under *Blockburger*, the defendant cannot prevail on this double jeopardy claim.

## III

The defendant lastly claims that he was twice subjected to jeopardy when punished for the offense of assault of a peace officer and for the offense of assault in the third degree. He argues that the legislature did not intend to create separate and distinct liability for a single assault that violated both §§ 53a-167c (a) and 53a-61 (a) (1).

Although the defendant cannot argue that § 53a-167c (a) (1) was derived from § 53a-61, assault in the third degree, the defendant relies on all the other law and arguments presented in part II. For the reasons given in part II, we reject the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.